UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TALIB AL SAWAD, | Case No. 11-CV-2923 (PJS/JJK) |
| Plaintiff, | |
| v. | ORDER |
| ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services, Washington, D.C.; and JANET NAPOLITANO, Secretary, Department of Homeland Security, Washington, D.C., | |
| Defendants. | |

Marc Prokosch, KARAM & ASSOCIATES, for plaintiff.

Durwood H. Riedel, UNITED STATES DEPARTMENT OF JUSTICE, for defendants.

Plaintiff Talib Al Sawad applied to become a legal permanent resident of the United States.  United States Citizenship and Immigration Services ("USCIS") denied Al Sawad's application because it found that he had engaged in terrorist activity and therefore was inadmissible.  A few months later, however, USCIS reopened Al Sawad's application in order to consider whether he should be granted discretionary relief from inadmissibility under a recently amended federal statute.  After waiting several years for a decision, Al Sawad filed this action to compel USCIS and the Department of Homeland Security ("DHS") to decide whether he should be granted discretionary relief.

This matter is before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment.  For the reasons stated below, the Court finds that it has jurisdiction over this

action and therefore denies defendants' motion to dismiss.  The Court also determines, however, that defendants are entitled to summary judgment on the merits of Al Sawad's claim.

I.  BACKGROUND

Al Sawad is an Iraqi who was admitted to the United States in 1996 as a refugee.[1]  Defs.' Ex. 1 ¶ 3.  In December 2004, Al Sawad submitted a Form I-485 application to become a legal permanent resident.  Defs.' Ex. 1 ¶ 4.  USCIS denied Al Sawad's application in January 2008 after finding that he was inadmissible under 8 U.S.C. § 1182(a)(3)(B).  Defs.' Ex. 1 ¶ 5.  Broadly speaking, § 1182(a)(3)(B) renders inadmissible any alien who has engaged in terrorist activity.  Al Sawad was found inadmissible under this provision because he participated in the March 1991 uprising against the Iraqi government in Basra, Iraq.  Defs.' Ex. 1 ¶¶ 5, 14-15.  The combat activities of the participants in the Basra uprising bring them within the definition of what is commonly called a "Tier III" terrorist organization.  Defs.' Ex. 1 ¶ 14; 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (defining a "terrorist organization" to include "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" certain statutorily defined terrorist activities).

Section 1182 contains a discretionary exemption from the terrorism-related inadmissibility provisions of § 1182(a)(3)(B).  This discretionary exemption was significantly broadened in December 2007.  As amended, § 1182(d)(3)(B) states, in relevant part:

> The Secretary of State, after consultation with the Attorney General
> and the Secretary of Homeland Security, or the Secretary of
> Homeland Security, after consultation with the Secretary of State
> and the Attorney General, may determine in such Secretary's sole

---

[1] Al Sawad alleges that he is an asylee.  Compl. ¶ 7.  In his briefing, however, he admits that he is a refugee.  ECF No. 16 at 2.  The distinction makes no difference in this case.

> unreviewable discretion that subsection (a)(3)(B) of this section
> shall not apply with respect to an alien within the scope of that
> subsection or that subsection (a)(3)(B)(vi)(III) of this section shall
> not apply to a group within the scope of that subsection . . . .

Under Section 1182(d)(3)(B), then, defendants have the discretion to exempt Al Sawad from the terrorism-related inadmissibility provisions of § 1182(a)(3)(B). But Al Sawad has been eligible for a possible exercise of this discretion only since § 1182 was broadened in December 2007. *See Debba v. Heinauer*, 366 Fed. Appx. 696, 697-98 (8th Cir. 2010) (per curiam) (explaining the relevant statutory history); *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 929-30 (D. Minn. 2011) (same).

In March 2008 — about three months after § 1182 was amended, and about two months after Al Sawad's I-485 application was denied — USCIS issued a policy memorandum directing its field agents to reopen and place on hold any I-485 applications that had been denied and that might be considered for a discretionary exemption under § 1182(d)(3)(B) in the future. Defs.' Ex. 1 ¶ 6. Pursuant to this directive, Al Sawad's I-485 application was reopened and placed on hold in April 2008. Defs.' Ex. 1 ¶ 6. After waiting for several years for a decision, Al Sawad filed this action in October 2011, seeking to compel defendants to adjudicate his pending I-485 application.

## II. ANALYSIS

Defendants move to dismiss for lack of jurisdiction and, in the alternative, move for summary judgment on the merits of Al Sawad's claim. The Court considers each argument in turn.

*A.  Motion to Dismiss*

Al Sawad filed this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., alleging that defendants have unreasonably delayed the adjudication of his pending I-485 application.[2] The APA explicitly gives courts the authority to "compel agency action unlawfully withheld or unreasonably delayed[.]"  5 U.S.C. § 706(1); *see also Califano v. Sanders*, 430 U.S. 99, 105 (1977) (courts have jurisdiction under 28 U.S.C. § 1331 over suits against agencies seeking to enforce provisions of the APA).  Many courts have held that, although the government cannot be compelled to *grant* an I-485 application, the government nonetheless has a mandatory, nondiscretionary duty to *adjudicate* an I-485 application within a reasonable time.  *See Al-Rifahe*, 776 F. Supp. 2d at 932-33.  Indeed, the government conceded as much at oral argument.  Al Sawad thus has a right to challenge as unreasonable the government's delay in adjudicating his application, unless there is some other law that would deprive the Court of jurisdiction.

Defendants argue that the Court is deprived of jurisdiction over Al Sawad's claim by virtue of 8 U.S.C. § 1252(a)(2)(B).  Section 1252(a)(2)(B), which is entitled "Denials of discretionary relief," states, in relevant part:

---

[2]In his complaint, Al Sawad also asked the Court to order defendants to issue implementing regulations that could be applied to him.  Compl. ¶ 1.  In briefing defendants' motion, however, Al Sawad said very little about this aspect of his claim.  In particular, he did not identify the source of any duty on defendants' part to issue implementing regulations.  At oral argument, Al Sawad contended that because his I-485 application cannot be adjudicated without implementing regulations, and because he is entitled to have his I-485 application adjudicated, he is also entitled to have implementing regulations issued.  The flaw in Al Sawad's argument is that USCIS could *deny* his I-485 application at any time without the issuance of implementing regulations.  Indeed, USCIS has already denied Al-Sawad's application once.

> Notwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review —
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

As this Court has previously held, however, § 1252(a)(2)(B) does not deprive it of jurisdiction when a plaintiff seeks to compel agency action to which he is entitled. "[T]he Attorney General has discretion over what a decision will be, but not over whether a decision will be made; the Attorney General does not have discretion to refuse to exercise his discretion." *Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1035 (D. Minn. 2008). Although the ultimate decision whether to grant or deny Al Sawad's application is discretionary, defendants do not have discretion to unreasonably delay making a decision or to make no decision at all. *See Al-Rifahe*, 776 F. Supp. 2d at 932-33 (citing cases). The Court therefore rejects defendants' argument that the Court lacks subject-matter jurisdiction.[3]

---

[3] Defendants also argue that Al Sawad both lacks standing and fails to state a claim under the APA because he is not currently suffering any injury. The Court disagrees. The APA gives Al Sawad the right to a timely decision on his I-485 application, and the alleged failure to provide him a timely decision deprives him of that right, which is all the injury necessary to establish standing and to state an APA claim. Moreover, even if a greater showing of injury were necessary, the anxiety suffered by Al Sawad because of continued uncertainty about his legal status is sufficient both to establish standing and to state a claim.

*B. Motion for Summary Judgment*

Defendants argue, in the alternative, that they are entitled to summary judgment because the delay in adjudicating Al Sawad's application is reasonable as a matter of law. The parties agree that, in determining the merits of Al Sawad's claim of unreasonable delay, the Court should weigh the factors identified in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal citations and quotations omitted).

A consideration of these factors leads the Court to conclude that defendants are entitled to summary judgment. The only factor that weighs in Al Sawad's favor is the third: Broadly speaking, Al Sawad's attempt to become a legal permanent resident implicates humanitarian rather than purely economic concerns. The remaining factors, however, militate in favor of the government. In particular, the first and fourth factors, which essentially involve a consideration of the reason for the delay, weigh heavily in the government's favor.

Many immigration cases in which courts have found unreasonable delay involve ministerial-type duties to perform a record search or conduct a security check. *See, e.g., Hong*

*Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1254-55, 1260-61 (W.D. Wash. 2008) (finding a three-year delay in processing plaintiff's "name check" to be unreasonable).  This case is on a much different footing.  It involves a sensitive and entirely discretionary grant of relief that implicates national security, foreign policy, and humanitarian concerns.  The decisionmaking process requires consultation between two Cabinet-level officials and the head of USCIS.  The record demonstrates that these officials have regularly been exercising their authority under § 1182(d)(3)(B).  *See* Defs.' Ex. 1 ¶¶ 19-20 (June 2008 discretionary decision to permit relief for persons associated with ten listed organizations); *id.* ¶ 21 (September 2009 discretionary decision to permit relief for persons associated with the Iraqi National Congress, the Kurdistan Democratic Party, and the Patriotic Union of Kurdistan); *id.* ¶ 22 (January 2011 discretionary decision to permit relief for persons associated with the All India Sikh Students Federation-Bittu faction and the All Burma Students Democratic Front); *id.* ¶ 23 (March 2011 discretionary decision to permit relief for persons who, under duress, engaged in military-type training or solicited for funds or members for terrorist organizations); *id.* ¶ 24 (November 2011 discretionary decision to permit relief, in certain circumstances, for persons who voluntarily provided medical care to members of terrorist organizations); *id.* ¶ 29 (between mid-2006 and November 30, 2011, USCIS granted a total of 14,064 exemptions in cases involving terrorist-related inadmissibility grounds).  This list well illustrates the number and diversity of the organizations and circumstances implicated by the discretionary authority in § 1182(d)(3)(B) and makes clear the complexity and sensitivity of the decisions that government officials must make under that statute.

The record also demonstrates that USCIS personnel have been doing what they can to expedite the processing of Al Sawad's application. Al Sawad has been fingerprinted five times (most recently in January 2011) to ensure that his case will be ready to be adjudicated once all other issues are resolved. Defs.' Ex. 1 ¶ 10. In addition, Al Sawad's preliminary security checks and FBI name checks have been completed. Defs.' Ex. 1 ¶¶ 11-12. In short, the record indicates that the government is not acting arbitrarily or indifferently in delaying adjudication of Al Sawad's application. Instead, field agents are doing what they can to keep Al Sawad's information current while higher-level officials are considering whether those who participated in the 1991 Basra uprising may be eligible for the exercise of discretionary relief.

With respect to the second factor, which concerns whether there is any congressionally indicated timeline for decision: Some courts have noted that, in 8 U.S.C. § 1571(b), Congress expressed its "sense . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." As other courts have noted, however, the decision whether to grant discretionary relief under § 1182(d)(3)(B) is a special circumstance that takes a case well outside of § 1571(b). *See Ayyoubi v. Holder*, No. 10-1881, 2011 WL 2983462, at *8 (E.D. Mo. Jul. 22, 2011) ("However, 8 U.S.C. § 1571 appears to apply generally to 'immigration benefit applications,' whereas plaintiff's circumstances present a special case."). The exercise of purely discretionary relief by Cabinet-level officials under § 1182(d)(3)(B) is akin to a policymaking function that is qualitatively different from garden-variety individual determinations of eligibility for immigration benefits. The Court therefore does not give § 1571(b) much weight in determining the reasonableness of the delay.

The fifth factor concerns the nature and extent of the interests prejudiced by the delay. Al Sawad claims to be suffering considerable prejudice, but most of the prejudice that he identifies stems from the failure to *grant* his application, not from the delay in *adjudicating* his application. For example, Al Sawad complains that he is unable to apply for citizenship and that his ability to travel is limited. But to take this type of prejudice into account would be to assume that Al Sawad's I-485 application will be granted. That, however, is not the issue here. No one contends that this Court has the power to compel USCIS to grant Al Sawad's I-485 application. Instead, Al Sawad is merely asking the Court to require USCIS to make a decision, whether favorable or unfavorable. Because Al Sawad cannot compel USCIS to grant his application, he cannot rely on the prejudice he suffers from the failure to grant it.[4] (Indeed, defendants argue, with some force, that if they are compelled to make a decision now, they will simply deny Al Sawad's application. Defs.' Ex. 1 ¶ 31.) Instead, Al Sawad can only rely on the prejudice he suffers from not knowing whether his application will be granted or denied.

The Court does not mean to make light of this prejudice. There is no question that existing in legal limbo is difficult — and existing in legal limbo for many years can have a substantial impact on a person's life. Nevertheless, unlike the other forms of prejudice on which Al Sawad would like to rely, the anxiety caused by the delay is not a particularly concrete or quantifiable form of prejudice. Moreover, it is worth noting that Al Sawad himself did not apply

---

[4] It is worth noting that, even taking into account the prejudice that Al Sawad suffers from the lack of a *favorable* decision, Al Sawad has not made a particularly compelling showing. The government has granted him travel authorization on three occasions. Defs.' Ex. 1 ¶ 33. In addition, because Al Sawad is a refugee, the effective date of his lawful permanent residence (should he attain that status) will be the date that he entered the United States. Defs.' Ex. 1 ¶ 8. Thus, the delay in adjudicating his I-485 application is not preventing Al Sawad from obtaining the required five years of lawful permanent residence necessary to be eligible for citizenship. *Id.*

to become a legal permanent resident until he had already been in the United States for eight years, Defs.' Ex. 1 ¶ 4, which undermines his claim that he has been substantially harmed by the uncertainty of his status.

Finally, the sixth factor, which states that delay may be unreasonable even if there is no government impropriety behind it, does not add anything to the analysis in this case. There is no suggestion that impropriety has played any part in delaying Al Sawad's application.

Based on the *TRAC* factors, the Court concludes that the delay in this case is reasonable. Indeed, this case is very like *Debba*, in which the Eighth Circuit found a much longer delay to be reasonable. *Debba*, 366 Fed. Appx. at 697, 699 (finding that delay was reasonable where plaintiff's I-485 application had been pending since 2000); *see also Rambang v. Mayorkas*, No. 11-3454 (JRT/JJK), 2012 WL 2449927, at *1 (D. Minn. June 27, 2012) (finding a nearly four-year delay in a similar case to be reasonable under the circumstances).

Al Sawad compares this case to *Al-Rifahe*, in which the court distinguished *Debba* and denied the government's motion for summary judgment on the reasonableness of the delay. *Al-Rifahe*, 776 F. Supp. 2d at 938. *Al-Rifahe* is distinguishable on several grounds, however. To begin with, the 13-year delay in *Al-Rifahe* dwarfs the 4-year delay in this case. Al Sawad's application was denied in 2008 and was reopened shortly thereafter for consideration of the discretionary exemption under § 1182(d)(3)(B). Al Sawad's current application, therefore, has only been pending since 2008. In addition, in *Al-Rifahe* the government had already issued a policy memorandum stating that members of the organization to which the plaintiff had belonged could be considered for a discretionary exemption from inadmissibility. *Al-Rifahe*, 776 F. Supp. 2d at 930. All that remained was an evaluation of the plaintiff's individual circumstances,

making it harder to justify the delay. *Id.* at 938 ("the government's argument regarding the lengthy process of assessing Tier III organizations is severely undermined in Al-Rifahe's case by the January 2010 memorandum determining that applications on hold because of the applicant's association with the INC may be considered for an exemption").  Here, by contrast, the government has not yet decided whether participants in the 1991 Basra uprising should be considered for discretionary relief.

\* \* \* \*

In sum, the decision that Al Sawad wants this Court to order defendants to make requires a great deal of interagency consultation and a significant investment of resources on the part of high-level government officials.  It also requires the careful weighing of sensitive national-security and foreign-policy concerns.  The officials vested with the authority to weigh these concerns have not been idle; they have been investing their time and using their discretion to examine the many and varied groups around the world that may be eligible for relief.  The complete discretion enjoyed by these officials under § 1182(d)(3)(B), combined with the immensity and difficulty of their task, counsels that courts should be very reluctant to second-guess the priority they have placed on any one individual's case.  Although Al Sawad is certainly suffering some prejudice from the uncertainty created by the delay in the adjudication of his I-485 application, that prejudice is relatively minor, and it does not come close to outweighing the factors demonstrating the reasonableness of the delay.  *Cf. Rambang*, 2012 WL 2449927, at \*7 ("As noted above, the exemption process in terrorism-related inadmissibility cases is a complex, sensitive, and potentially lengthy one.  Rambang's evidence — had he submitted any — would therefore have needed to demonstrate substantial harm outweighing the government's interest in

completing this delicate process." (internal citation omitted)). Defendants' motion for summary judgment is therefore granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss or, in the alternative, for summary judgment [Docket No. 6] is GRANTED IN PART and DENIED IN PART.

2. The motion is DENIED to the extent it seeks dismissal for lack of jurisdiction or for failure to state a claim.

3. The motion is GRANTED to the extent it seeks summary judgment on the merits of plaintiff's claims.

4. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 7, 2012    s/Patrick J. Schiltz
                         Patrick J. Schiltz
                         United States District Judge